UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE
JUL 20  11 34 AM '00
US DISTRICT
DISTRICT
MASSACHUSETTS

| | |
|---|---|
| MONAHAN CORPORATION N.V., TREETOP INVESTMENTS N.V., and GANATERRA CORP., N.V., *Plaintiffs,*<br><br>v.<br><br>ROBERT M. WHITTY, DENNIS ETZKORN, 261 OLIVER STREET REALITY TRUST, BLAKE J. GODBOUT, and DIMARIA AND GODBOUT, P.A. *Defendants.* | 00 CV 11424 MLW<br>CIVIL ACTION NO. |

### PLAINTIFFS' ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

### JURISDICTION

1. Jurisdiction is based upon 28 U.S.C. §1332 (diversity of citizenship), and on the pendent jurisdiction of this court to entertain claims arising under state law.

### PARTIES

2. The Plaintiff, Monahan Corporation N.V. ("Monahan"), is a Curacao corporation with its principal place of business in Houston, Harris County, Texas.

3. The Plaintiff, Treetop Investments N.V. ("Treetop"), is a Curacao corporation with its principal place of business in Houston, Harris County, Texas.

4. The Plaintiff, Ganaterra Corp., N.V. ("Ganaterra"), is a Curacao corporation with its principal place of business in Houston, Harris County, Texas. Monahan,

Treetop and Ganaterra are all managed and operated by Woodco Fund Management Corporation, a Texas corporation, and will be referred to herein as the "Woodco Plaintiffs."

5. The Defendant, Dennis Etzkorn (hereinafter "Etzkorn"), is, upon information and belief, a Massachusetts resident with his residence address at 13A Williams Avenue, Hyde Park, Massachusetts 02136.

6. The Defendant, Robert M. Whitty, a/k/a R. Michael "Mike" Whitty (hereinafter "Whitty"), is, upon information and belief, a Massachusetts resident with his residence address at 59 Lordan Road, Raynham, Massachusetts.

7. The Defendant, 261 Oliver Street Realty Trust ("261 Oliver"), is, upon information and belief, a Massachusetts realty trust located at either 59 Lordan Road, Raynam, Massachusetts or 124 Washington Street, Foxboro, Massachusetts. Upon information and belief, Blake J. Godbout and Robert Michael Whitty are the Trustees of said Trust.

8. The Defendant, Blake J. Godbout, is, upon information and belief, a Massachusetts resident and an attorney duly licensed to practice law in Massachusetts with his principal place of business at 15 Broad Street, Suite 700, Boston MA 02109.

9. The Defendant, DiMaria and Godbout, P.A., is, upon information and belief, a professional association organized under the laws of the Commonwealth of Massachusetts with its principal place of business at 15 Broad Street, Suite 700, Boston MA 02109.

## FACTUAL ALLEGATIONS

10. In late 1996 and early 1997, Whitty solicited the Woodco Plaintiffs to invest funds into Volonte Care, Inc., and in the course of doing so, Whitty made numerous oral and written representations about the business of Volonte Care, Inc. and how Plaintiffs' funds would be used.

11. Whitty represented that he was the sole shareholder, director and President of Volonte Care, Inc. Whitty represented that Volonte Care, Inc., along with its subsidiaries (jointly referred to herein as "Volonte"), were providers of nursing home services, home health care services, rehabilitation services and community based assisted living services for the elderly in Massachusetts, Rhode Island, Connecticut and Maine. Whitty represented that Volonte operated and managed nursing homes and home health care facilities.

12. Whitty represented that funds invested by Plaintiffs would be used for operations and to acquire nursing homes and home health care facilities that would be owned and operated by Volonte. Whitty represented that Volonte was operating a facility located at 261 Oliver Street in Fall River, Massachusetts (hereinafter "Fall River"), and that he needed funds so that Volonte could purchase the Fall River facility.

13. In reliance on Whitty's representations, the Woodco Plaintiffs made substantial loans to Volonte and acquired shares of stock of Volonte. The Woodco Plaintiffs invested the amount of $550,000 between March and December of 1997. These amounts were put into a trust account maintained by DiMaria and Godbout on behalf of Volonte.

14. Blake Godbout and his law firm, DiMaria and Godbout (jointly referred to herein as "Godbout"), acted as the attorneys for Volonte. At all times relevant hereto, Godbout had actual or implied authority to act on behalf of DiMaria and Godbout, and/or Godbout was acting within the course and scope of his employment and his agency on behalf of DiMaria and Godbout, and thus DiMaria and Godbout is vicariously liable for all wrongful acts of Blake Godbout.

15. Plaintiffs have recently discovered that Whitty improperly and illegally misappropriated certain funds invested by Plaintiffs from the Godbout trust account and converted them to his own personal benefit. On or about December 30, 1997, $80,000 invested by Plaintiffs was wire transferred from the Godbout trust account to Fleet Bank to pay the second mortgage on Whitty's house at 59 Lordan Road, Raynam, Massachusetts. Upon information and belief, Godbout knew that Whitty was taking company funds and converting them to his personal use, and Godbout knowingly participated in Whitty's acts. Upon information and belief, Godbout represented Whitty with respect to the fraudulent transaction whereby Whitty misappropriated Plaintiffs' funds to pay Fleet Bank, and the funds came directly from Godbout's own trust account.

16. After the fraud was perpetrated, Whitty and Godbout concealed the fraud and did not inform Volonte, its board of directors or Plaintiffs that Whitty had essentially stolen company funds from the Godbout trust account and used them to pay his personal mortgage. Had Plaintiffs known about this fraud, and had Plaintiffs known that Whitty was acting in this improper and illegal manner, Plaintiffs would have never advanced additional funds to Whitty or Volonte. Thus, as a

result of the fraudulent concealment of the theft of Plaintiff's funds, Plaintiffs were damaged in the amount of $2,975,000, which is the amount Plaintiffs advanced after Whitty fraudulently misappropriated $80,000 of Plaintiffs' funds to pay his personal mortgage.

17. Whitty also represented to Plaintiffs that funds advanced by Plaintiffs would be used to purchase Fall River, and Whitty represented that Plaintiff's funds were indeed used to purchase Fall River. Subsequently, Whitty told Plaintiffs that Fall River was purchased through an entity known as 261 Oliver Realty Trust ("261 Oliver"), which is a realty trust. Whitty represented that Volonte owned 261 Oliver, and that 261 Oliver owned Fall River, and that Volonte was thus the beneficial owner of Fall River.

18. Plaintiffs later discovered that Whitty personally owned 261 Oliver, and when Whitty was questioned about this, he represented that he was holding 261 Oliver for the benefit of Volonte, and that he would transfer ownership of 261 Oliver to Volonte. Despite repeated demands by Plaintiffs, and despite repeated promises by Whitty to acquiesce, Whitty refused for some time to transfer ownership of 261 Oliver and/or Fall River to Volonte.

19. Upon information and belief, Godbout knowingly participated in Whitty's plan to not use Plaintiff's funds to purchase Fall River, but instead to retain 261 Oliver and/or Fall River for his own personal interests. Upon information and belief, while Godbout purported to represent Volonte and act as its attorney, he was acting as the attorney for Whitty. It was Godbout who drafted the legal papers that set up 261 Oliver with Whitty as the owner, and Godbout was an initial

trustee of 261 Oliver. Upon information and belief, Godbout knew (and as a "trustee" he should have known) that Whitty had taken Plaintiffs' funds to buy Fall River through 261 Oliver for the benefit and/or ownership of Volonte.

20. Upon information and belief, Whitty transferred a thirty percent (30%) partial ownership interest in 261 Oliver to Etzkorn. Upon information and belief, Whitty and Etzkorn have conspired together to keep and/or convert ownership of 261 Oliver and Fall River to themselves personally. The governing documents of 261 Oliver, drafted by Godbout, provide that an owner of the trust cannot transfer his interest in the trust without the consent of the other owners of the trust. Upon information and belief, Whitty promised to give Etzkorn, and did give Etzkorn, an additional twenty percent (20%) ownership interest in 261 Oliver so that Etzkorn would refuse to consent to Whitty's transfer of his ownership interest in 261 Oliver. Thus, although Whitty did eventually purport to transfer ownership of 261 Oliver to Volonte, he ensured the transfer would not be valid by virtue of his conspiracy with Etzkorn. Etzkorn also knowingly participated in the scheme to use Plaintiffs' funds to acquire Fall River for his and Whitty's personal use.

21. Upon information and belief, Whitty always intended to divert funds obtained from Plaintiffs for his own personal use. Whitty simply used Volonte as the device by which he could induce Plaintiffs to advance funds that he would convert to his personal benefit.

## Count I--Actual and Constructive Fraud

22. Plaintiffs reiterate and reallege herein all of the allegations set forth in Paragraphs 1 through 21 above.

23. Defendants' conduct constitutes actual and constructive fraud against Plaintiffs. All Defendants knowingly participated in the fraud.

24. As a result of the actual and constructive fraudulent conduct of the Defendants, the Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs, pray that judgment be entered against the Defendants in an amount to be ascertained, but certainly more than $75,000, plus interest, costs and whatever additional relief the Court deems necessary and proper. The Plaintiffs further seek punitive damages against Defendants in the amount of $10,000,000.00 as a result of their intentional, malicious and fraudulent conduct.

## Count II--Conversion

25. Plaintiffs reiterate and reallege herein all of the allegations set forth in Paragraphs 1 through 24 above.

26. Defendants conduct constitutes a theft and conversion of Plaintiffs' funds. All Defendants knowingly participated in the conversion of Plaintiffs' funds.

27. As result of the conversion, the Plaintiffs have been damaged.

WHEREFORE, the Plaintiffs, pray that judgment be entered against the Defendants in an amount to be ascertained, but certainly more than $75,000, plus interest, costs and whatever additional relief the Court deems necessary and proper. The Plaintiffs

further seek punitive damages against Defendants in the amount of $10,000,000.00 as a result of their intentional, malicious and fraudulent tortious conduct.

### Count III–Conspiracy

28. Plaintiffs reiterate and reallege herein all of the allegations set forth in Paragraphs 1 through 27 above.

29. All Defendants knowingly engaged in a conspiracy to defraud Plaintiffs, to steal and convert Plaintiff's funds, and to divert and use Plaintiffs' funds for their own personal purposes.

30. The Plaintiffs have been damaged by Defendants' conspiracy.

WHEREFORE, the Plaintiffs, pray that judgment be entered against the Defendants in an amount to be ascertained, but certainly more than $75,000, plus interest, costs and whatever additional relief the Court deems necessary and proper. The Plaintiffs further seek punitive damages against Defendants in the amount of $10,000,000.00 as a result of their intentional, malicious and fraudulent conspiracy.

### Count IV—Constructive Trust

31. Plaintiffs reiterate and reallege herein all of the allegations set forth in Paragraphs 1 through 30 above.

32. Plaintiffs' funds were stolen and transferred by Whitty to Fleet Bank to pay Whitty's personal mortgage on his home. Plaintiffs' funds were also stolen and transferred to 261 Oliver, and 261 Oliver used the funds to purchase Fall River.

33. Plaintiffs are entitled to a constructive trust over Whitty's house at 59 Lordan Road, Raynam, Massachusetts, and over 261 Oliver and Fall River, the properties acquired with the illicit use of Plaintiffs' funds and obtained by Defendants as a result of Defendants' fraud, constructive fraud, conversion and/or conspiracy. WHEREFORE, Plaintiffs hereby seek a constructive trust on all assets or properties acquired by Defendants with Plaintiffs' funds, including but not limited to Whitty's house at 59 Lordan Road, Raynam, Massachusetts, and 261 Oliver and Fall River.

### Count V---Breach of the Covenant of Good Faith and Fair Dealing

34. Plaintiffs reiterate and reallege herein all of the allegations set forth in Paragraphs 1 through 33 above.

35. As described above, Plaintiffs entered into loan and financing agreements with Defendants, whereby Plaintiffs would receive shares of stock in Volonte, for which the value of the shares of stock in Volonte would be supported by assets acquired for Volonte from the funds provided by Plaintiffs;

36. Plaintiffs entered in to the loan and financing agreements with Defendants in good faith.

37. Defendants have not used the funds received by Plaintiffs in the manner upon which they represented the funds would be used and in reliance upon which Plaintiffs agreed to provide said funds.

38. Defendants have breached their agreements with Plaintiffs by which they acquired funds from Plaintiffs in bad faith.

39. As a direct and proximate cause of Defendant's conduct, Plaintiffs have suffered and continue to suffer severe financial hardship.

WHEREFORE, the Plaintiffs, pray that judgment be entered against the Defendants in an amount to be ascertained, but certainly more than $75,000, plus interest, costs and whatever additional relief the Court deems necessary and proper. The Plaintiffs further seek punitive damages against Defendants in the amount of $10,000,000.00 as a result of their intentional, malicious and fraudulent conspiracy.

### Count VI—Violation of M.G.L. c. 93A

40. Plaintiffs reiterate and reallege herein all of the allegations set forth in Paragraphs 1 through 39 above.

41. By failing to use the funds obtained from Plaintiffs in the manner in which they represented the funds would be used, Defendants have acted unfairly and deceptively in acquiring the funds from Plaintiffs.

42. By refusing to use the funds as represented they would be used and by failing to properly transfer ownership of 261 Oliver and/or Fall River to Volonte, Defendants have acted willfully and deliberately in bad faith.

WHEREFORE, Defendants are liable to Plaintiffs for Plaintiffs actual damages and their reasonable attorneys' fees and costs, and insofar as Defendants' violations of M.G.L. c. 93A were willful and deliberate, Defendants are liable to Plaintiffs for double or treble Plaintiffs' actual damages.

## Prayer for Relief

WHEREFORE, the Plaintiffs hereby request that this Court Order the following:

(1)  The award of all actual damages incurred, including the return of all amounts invested by Plaintiffs;

(2)  Pre-judgment interest at the maximum lawful rate;

(3)  Post-judgment interest at the maximum lawful rate;

(4)  The award of punitive damages of $10,000,000.00;

(5)  The imposition of a constructive trust;

(6)  The award of attorneys' fees and costs;

(7)  Double or treble Plaintiffs' actual damages; and

(8)  Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

NOW COME the Plaintiffs and hereby demand a jury trial of all issues of fact and all mixed issues of law and fact.

Respectfully submitted,
The Plaintiffs,
By their attorneys,

*/s/ Mark A. Rosen*

Mark A. Rosen, BBO# 555790
Gina A. Leahy, BBO# 556901
Rosen & Bernstein
185 Devonshire Street, Suite 200
Boston, Massachusetts 02110
(617) 422-0100

Of Counsel
D. Scott Funk, Esq.
Looper Reed & McGraw
A Professional Corporation
Texas State Bar No. 07550900
1300 Post Oak, Suite 2000
Houston, TX 77056
(713) 986-7000